UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  6:24-cr-6032 (BKS)

AKRAM MARSEET,

                Defendant.

**Appearances:**

*For the United States of America:*
Trini E. Ross
United States Attorney
Everardo A. Rodriguez
Assistant United States Attorney
100 State Street, Suite 500
Rochester, New York 14614

*Defendant pro se:*
Akram Marseet
603979
Monroe County Jail
130 South Plymouth Avenue
Rochester, NY 14614

*Standby Counsel for Defendant Akram Marseet:*
David C. Pilato
Pilato Law, PLCC
30 West Broad Street, Suite 100
Rochester, NY 14614

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.  INTRODUCTION

Defendant Akram Marseet is charged with threatening two United States judges in violation of 18 U.S.C. § 115(a)(1)(B) and 18 U.S.C. § 115(b)(4) as well as transmitting an interstate threatening communication in violation of 18 U.S.C. § 875(c). (Dkt. No. 22). The

affidavit in support of the complaint details a threatening statement Defendant is alleged to have made on a phone call with an Intake Clerk for the Western District of New York. (Dkt. No. 1, ¶¶ 4–9).

The Government moved for detention at Defendant's initial appearance in Denver, Colorado on January 16, 2024, and Magistrate Judge Scott T. Varholak held a detention hearing on January 19, 2024. (Case No. 1:24-mj-9, Dkt. Nos. 3, 8). At the conclusion of the hearing, Magistrate Judge Varholak granted the Government's motion and ordered that Defendant be detained. (Dkt. No. 56-3, at 55–57). On November 25, 2024, Defendant moved for conditional pretrial release. (Dkt. No. 52). The Court construes this as a motion to review the detention order pursuant to 18 U.S.C. § 3145(b). The Government responded in opposition to Defendant's motion, (Dkt. No. 56), and Defendant replied, (Dkt. No. 65).[1]

As set forth below, the Court finds that the Government has shown by clear and convincing evidence that Defendant poses a danger to the safety of other persons and the community and that no condition or combination of conditions can reasonably mitigate these risks. Accordingly, Defendant's motion is denied.

## II.   STANDARD OF REVIEW

The Bail Reform Act of 1984 authorizes and sets forth the procedures for pretrial detention of a criminal defendant. *See generally* 18 U.S.C. §§ 3141 *et seq.* If the Government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). First, the court must determine whether a detention hearing is authorized. *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir.

---

[1] Defendant's reply was due by December 26, 2024, but it was submitted on December 27, 2024 and docketed on December 30, 2024. (Dkt. No. 65-1). With the reply, Defendant requested that the Court extend the time to reply until December 27, 2024. (*Id.* at 3). The Court grants the extension of time to file nunc pro tunc, and accepts Defendant's reply, (Dkt. No. 65), as filed.

2

1987).[2] Second, if the court determines that a detention hearing is authorized, the court must consider whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community by applying four factors in § 3142(g). *See United States v. Berrios–Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) (noting that the Bail Reform Act codified the "traditional presumption favoring pretrial release 'for the majority of Federal defendants'" (citation omitted)).

If a magistrate judge orders that a defendant awaiting trial be detained, the defendant may file "a motion for revocation or amendment of the order," "with the court having original jurisdiction over the offense," and the motion must be "determined promptly." § 3145(b). A district court reviews *de novo* a magistrate judge's pretrial detention order. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *see United States v. Rentas*, 889 F. Supp. 579, 579 (N.D.N.Y. 1995) (citing *Leon* and concluding that "such motions should be accorded substantially *de novo* review"). A district court should not simply defer to the judgment of the magistrate judge, but rather must reach its own independent conclusions. *Leon*, 766 F.2d at 80. When conducting its *de novo* review, a district court may rely on the record developed before the magistrate judge and may also accept additional evidence. *United States v. Colombo*, 777 F.2d 96, 98 (2d Cir. 1985).

## III.  DISCUSSION

### A.  Detention

Once a court has concluded that a detention hearing is authorized, the court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence

---

[2] A detention hearing is authorized only if the Government establishes by a preponderance of the evidence that the case involves one of the offenses enumerated in § 3142(f)(1) or that the case involves a serious risk of flight, obstruction of justice, or threats to a witness or juror. *See* 18 U.S.C. § 3142(f)(2); *United States v. Dillard*, 214 F.3d 88, 90–91 (2d Cir. 2000); *United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019) ("[T]he Government must establish by a preponderance of the evidence that it is entitled to a detention hearing."). Defendant does not argue that the detention hearing was unwarranted. (*See generally* Dkt. No. 52).

3

against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. § 3142(g). The court may determine the weight to be accorded each factor. *United States v. Shakur*, 817 F.2d 189, 196 (2d Cir. 1987). If, based on an application of these factors, the court determines that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community," the defendant must be detained. § 3142(e)(1).

A finding as to the appearance of the defendant must be made by a preponderance of the evidence, *Jackson*, 823 F.2d at 5, and a finding as to the safety of any other person and the community must be made by clear and convincing evidence, *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995). But the court need not find that both bases are established to order detention. *See* § 3142(e); *United States v. Blanco*, 570 F. App'x 76, 78 (2d Cir. 2014). And the rules of evidence do not apply. *Ferranti*, 66 F.3d at 542; Fed. R. Evid. 1101(d)(3).

The Court has reviewed the complaint, (Dkt. No. 1), letters submitted on Defendant's behalf, (Case No. 1:24-mj-9, Dkt. No. 11), the pretrial services report recommending detention, Defendant's motion, (Dkt. No. 52), the Government's response, including each exhibit (Dkt. No. 56), and Defendant's reply, (Dkt. No. 65).[3] The Court now considers each § 3142(g) factor in turn.

---

[3] The Court notes that Defendant devotes much of his motion and reply brief to re-litigating the merits of his civil case and his assertions of "judicial misconduct" in the handling of his civil case. (*See, e.g.*, Dkt. No. 52, at 4–10; Dkt. No. 65, at 11–14, 159–237).

Furthermore, Defendant's reply raises arguments not previously made in the November 25, 2024 motion including, for example, that Magistrate Judge Varholak erred in determining probable cause because Defendant's alleged statement was not a true threat. (Dkt. No. 65, at 31–62). However, any arguments "raise[d] for the first time in his . . . reply brief are forfeited." *United States v. Davis*, 122 F.4th 71, 78 (2d Cir. 2024). The forfeiture rule, which is "regularly appl[ied]" to *pro se* litigants, means that issues raised for the first time in a reply brief are generally deemed waived and courts need not consider such arguments. *Id.*; *see also United States v. Karimu*, 470 F. App'x 45, 46 (2d Cir. 2012). Accordingly, while the Court need not consider arguments made for the first time in Defendant's reply, the Court has considered and rejects Defendant's probable cause challenge. *See United States v. Hunt*, 82 F.4th 129,

1.      **Nature and Circumstances of the Offense Charged**

"The Court must first consider the nature and circumstances of the offenses charged, 'including whether the offense is a crime of violence.'" *United States v. Choudhry*, 941 F. Supp. 2d 347, 350 (E.D.N.Y. 2013) (quoting 18 U.S.C. § 3142(g)(1)). Defendant is charged with threatening two United States judges in violation of 18 U.S.C. § 115(a)(1)(B) and 18 U.S.C. § 115(b)(4) as well as transmitting an interstate threat to murder the two judges and a court clerk in violation of 18 U.S.C. § 875(c). (Dkt. No. 22). Each charged offense is a "crime of violence" within the meaning of the Bail Reform Act. *See United States v. Dai*, No. 23-cr-478, 2023 WL 11016392, at *2–4, 2023 U.S. Dist. LEXIS 237124, at *4–12 (N.D.N.Y. Dec. 19, 2023), *aff'd* 99 F.4th 136 (2d Cir. 2024); *United States v. Ward*, No. 24-mj-504, 2024 WL 4116206, at *3, 2024 U.S. Dist. LEXIS 161837, at *7–8 (E.D.N.Y. Sept. 9, 2024) (citing cases).

Here, Defendant allegedly called the Clerk's Office for the Western District of New York, identified himself, became agitated because his civil case was dismissed that same day, referred to the judges assigned to his civil case as "dirty sons of bitches" and then said in reference to those two judges and the intake clerk, "If I ever come across any of you, you will be dead sons of bitches." (Dkt. No. 1, ¶¶ 4–9). Because the crimes with which Defendant is charged are crimes of violence and given that these crimes "strike[] at the heart of the judicial system," *Ward*, 2024 WL 4116206, at *3, 2024 U.S. Dist. LEXIS 161837, at *7, this factor weighs in favor of detention.

---

134–35 (2d Cir. 2023) (noting that a "true threat" is one that "an ordinary, reasonable recipient who is familiar with the context of the [communication] would interpret . . . as a threat of injury" and "one that the defendant made at least recklessly by consciously disregarding the 'risk that his communication[ ] would be viewed as threatening violence'") (citations omitted).

### 2.  Weight of the Evidence

"In assessing the weight of the evidence against [a] [d]efendant, it is important to note that [the] [d]efendant is presumed innocent, and 'it is not the Court's role at this stage of the proceedings to assess [the defendant's] guilt or innocence.'" *United States v. Mendez*, No. 19-cr-245, 2020 WL 3263446, at *4, 2020 U.S. Dist. LEXIS 105823, at *12 (W.D.N.Y. June 17, 2020). "This factor may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Id.* (citations and internal quotation marks omitted).

The Government characterizes the weight of the evidence against Defendant as "straightforward." (Dkt. No. 56, at 13). Although Defendant emphasizes that the telephone conversation wherein the threats were allegedly made was not recorded, (Dkt. No. 52, at 14–15), the Intake Clerk who took the call provided a statement regarding the substance of the conversation and the threats. (Dkt. No. 56-2). After the call, the Intake Clerk relayed the details of the call to his supervisors, and then to Deputy Marshal Eaton. (Dkt. No. 56, at 13) The Intake Clerk memorialized the incident in a written sworn statement the same day. (Dkt. No. 56-2). The Government also argues that Defendant's intent and motive to threaten are "amply" supported by the temporal proximity of the threats to the dismissal of Defendant's civil case and Defendant's "long history of aggressive, abusive, and insulting language throughout his communications with opposing counsel and with Magistrate Judge Payson and her staff." (Dkt. No. 56, at 12–13). Defendant argues that there is "[n]ew evidence" to support pre-trial release, including that he is innocent, and that the venue is falsely charging him as part of a conspiracy. (Dkt. No. 52, at 2). However, Defendant's resentment towards the venue, which is palpable throughout his motion and reply brief, only serves to raise the risk that he poses a danger. Consequently, the Court,

although mindful not to reach any conclusions about Defendant's guilt or innocence, finds that the weight of the evidence supports detention.

### 3. History and Characteristics of Defendant

When reviewing the history and characteristics of a defendant, a court should consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." § 3142(g)(3)(A). "Good character, strong and lengthy ties to the community, and a lack of drug abuse, among other characteristics, may suggest a . . . reduced [risk of non-appearance]; by contrast, an absence of such ties, frequent travel, or strong connections to foreign countries may suggest an increased risk of [non-appearance]." *Choudhry*, 941 F. Supp. 2d at 355. In evaluating the safety of any other person and the community, detention is appropriate "where there is a strong probability that a person will commit additional crimes if released." *Colombo*, 777 F.2d at 100.

Defendant is a citizen of Libya. (Dkt. No. 56-3, at 48). He came to the United States in 2014 to study at the Rochester Institute of Technology, but was subsequently expelled. (*Id.* at 15, 52, 56). He then moved to Colorado, where he was working toward a doctorate degree at the Colorado School of Mines. (*Id.* at 56–57). Defendant developed ties to Colorado, as evidenced by his involvement in his mosque and school and the several letters submitted on his behalf by community members. (*Id.* at 50). There is nothing in the record to suggest that Defendant wants to go back to Libya. While Defendant therefore has ties to a foreign country, the record indicates that his ties to the United States are much stronger.

However, while Defendant's ties to Libya do not appear to present a high risk of non-appearance, the Court must consider the Defendant's character and his past conduct. Defendant

argues that he is not a risk to the community, because he had never made threats, even in the face of the wrongs he perceives were committed against him. (Dkt. No. 52, at 29–31). He further argues that he was in a PhD program, has strong friendships in his community, has not made any incriminating internet searches, and has not booked travel to Rochester. (*Id.* at 31–36).

Nevertheless, the Court notes that Defendant's civil case was dismissed, "a harsh remedy to be used only in extreme situations," because of his repeated use of "offensive, abusive, and insulting language" in his communications with opposing counsel and the court. (Dkt. No. 56-1, at 1–2, 5). Defendant repeatedly made accusations he was warned to cease, repeatedly demeaned opposing counsel, repeatedly violated the magistrate judge's orders, and "asserted his entitlement to override court directives and dictate the terms of his own litigation conduct based on his own standards." (*See generally id.* (detailing Defendant's behavior throughout his civil litigation)). The district court concluded that Defendant's "persistent and inappropriate conduct has been willful and in bad faith." (Dkt. No. 56-1 at 15). Defendant's instant motion continues to evidence his animosity against the judges who presided over his civil case, with accusations of "severe judicial misconduct." (*See* Dkt. No. 52, at 7–10). Even before his case was dismissed, Defendant used "abusive language" towards court staff and "created somewhat of a disturbance in the clerk's office" such that a U.S. marshal had to take the "fairly rare" step of speaking with him to warn him against such behavior. (Dkt. No. 56-3, at 31–32, 56).[4] Defendant appears to have a "deeply held resentment for the judicial system." *Ward*, 2024 WL 4116206, at *4, 2024 U.S. Dist. LEXIS 161837, at *10.

---

[4] In his reply, Defendant points to Magistrate Judge Payson's description of the event as proof that he did not use abusive language. (Dkt. No. 65, at 21–22). Magistrate Judge Payson's description was that "Marseet became visibly upset, raised his voice while communicating with Clerk's office staff, and caused a disrubtion [sic]. According to staff, Marseet expressed frustration that his filing from the previous day had not yet been uploaded to the electronic docket." (*Id.*).

8

Even the letters of support submitted prior to the detention hearing corroborate Defendant's struggles and sole focus on this civil case. (*See* Case No. 1:24-mj-9, Dkt. No. 11, at 1 ("Akram has had one goal in mind since the moment he was evidently unjustly expelled from a college in upstate New York, and that is to be exonerated. . . . [Marseet has] struggled long and hard against a terrible tragedy to find that the game is rigged against him. He felt like he could trust the justice system to examine his evidence and rule in his favor but he now has lost that faith.")). The Court finds that Defendant's past abusive conduct, his animosity toward the judicial system and his inability or unwillingness to comply with court orders weigh in favor of detention. *See Ward*, 2024 WL 4116206, at *4, 2024 U.S. Dist. LEXIS 161837, at *10.

### 4.     Nature and Seriousness of the Danger

Finally, the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g)(4). Although Defendant does not have a prior criminal record, and there is no indication that he had any plan to act on any threat, his near-obsessive focus on his civil case, loss of faith in the judiciary, and prior abusive conduct towards court staff raises the risk that Defendant would make more threats or follow through on one if released. *See Ward*, 2024 WL 4116206, at *3, 2024 U.S. Dist. LEXIS 161837, at *7 (finding that "the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release is immense" when the defendant was alleged to have told a magistrate judge that he was going to "choke" a district court judge "to death" if he "ever see[s] her again").

Thus, after carefully considering all of the factors, the Court finds that the Government has shown by clear and convincing evidence that Defendant poses a danger to the safety of any

9

other person and the community.[5] And at the same time, the Court finds that no condition or combination of conditions can reasonably mitigate these risks. Although Defendant's motion identifies proposed pre-trial release conditions, (Dkt. No. 52, at 48–50), the Court is concerned about whether Defendant would follow any conditions set by the Court given his well-documented history of refusing to comply with court orders. (*See, e.g.*, 56-1 (detailing Defendant's behavior in his civil case which warranted dismissal with prejudice)).

Based on the foregoing, Defendant's motion, (Dkt. No. 52), is denied.

### B.     Defendant's Other Arguments

Defendant cites to inapposite case law to argue that he should be granted pre-trial release. (Dkt. No. 52, at 19–22). The first case cited by Defendant did not address any issue involving bail: the Second Circuit vacated a special condition of supervised release. *United States v. Carlineo*, 998 F.3d 533 (2d Cir. 2021). Although the Defendant in *Carlineo* had been released on bail, there was no analysis or discussion of the factors that led to that decision. And detention is a "case-specific inquiry." *United States v. Williams*, 736 F. App'x 267, 271 (2d Cir. 2018). The second case cited by Defendant does pertain to detention, but in that case, the court found that pre-trial detention was authorized and proper. *United States v. Lewis*, 5 F. Supp. 3d 515, 525–27 (S.D.N.Y. 2014). There, the court initially denied bail where the defendant "had a long history of making threats to judges and judicial employees," "there was a risk that [defendant] would carry out one of her threats," and defendant "had a history of violating court orders." *Id.* at 519. Nearly a year later, the court did grant the defendant's motion for release on bail, subject to a series of conditions. *Id.* at 522. Three weeks after release, the defendant violated her bail conditions and

---

[5] Because the Court determines under § 3142(e) that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community," the Court does not consider whether any "condition or combination of conditions will reasonably assure the appearance of the [defendant] as required." *See Blanco*, 570 F. App'x at 78) (holding that the court need not find that both bases are established to order detention).

her bail was revoked. *Id.* at 523–24. To the extent the Court were to consider *Lewis*, it supports the Court's concern that Defendant would violate any conditions imposed if he were to be released.

Defendant further argues that this venue "lack[s] jurisdiction to prosecute" him, because it is not "in the state where he committed" the alleged crime. (Dkt. No. 52, at 21). However, under 18 U.S.C. § 3237(a), "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." Therefore, although Defendant was in Colorado when he made the threats, the threats were levied to a person in the Western District of New York. Accordingly, this Court is a proper venue and has jurisdiction to prosecute.

Defendant's motion also details perceived violations of due process, stemming from discovery disputes. (Dkt. No. 52, at 22–26). The Court notes that Defendant filed a separate submission regarding discovery disputes, (Dkt. No. 54), which this Court considered at the hearing on January 13, 2025. Furthermore, Defendant's arguments about the "misconduct" and "unprofessional performance" of his prior counsel, (Dkt. No. 52, at 27–28), are not supported and are not relevant to the matter of detention.

Defendant next argues that the "Interest of Justice" mandates his release, because he "has been forced to present himself as Pro Se," and needs to be released so that he can prepare for trial, collect evidence, and prepare a defense. (*Id.* at 44). Defendant argues that "[b]eing Pro Se itself is very hard, and being Pro Se in a Jail with little resources constitutes a risk of prejudice." (*Id.* at 45). The Court notes that Defendant has chosen to represent himself pro se after having initially been assigned an Assistant Federal Public Defender, who was terminated at Defendant's

request when Defendant obtained private counsel. The Court subsequently terminated private counsel, at Defendant's request to proceed pro se, and has assigned stand by counsel to assist Defendant. The Court has considered Defendant's argument regarding the challenges of representing oneself pro se while incarcerated, but after carefully considering all of the factors in § 3142(g), the Court finds that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released, and therefore denies his motion.

## IV. CONCLUSION

For these reasons, it is hereby **ORDERED** that Defendant shall remain detained pending the trial in this matter.

**IT IS SO ORDERED.**

Dated: <u>January 14, 2025</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge