UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                                                          6:24-cr-6032 (BKS)

AKRAM MARSEET,

                              Defendant.

**Appearances:**

*For the United States of America:*
Michael DiGiacomo
United States Attorney
Everardo A. Rodriguez
Assistant United States Attorney
100 State Street, Suite 500
Rochester, New York 14614

*Defendant pro se:*
Akram Marseet
603979
Monroe County Jail
130 South Plymouth Avenue
Rochester, New York 14614

*Standby Counsel for Defendant Akram Marseet:*
David C. Pilato
Pilato Law, PLCC
30 West Broad Street, Suite 100
Rochester, New York 14614

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On February 27, 2024, Defendant Akram Marseet was indicted on two counts of threatening a United States judge in violation of 18 U.S.C. § 115(a)(1)(B) and 18 U.S.C. § 115(b)(4). (Dkt. No. 7). On July 30, 2024, in a superseding indictment, Defendant was indicted

on those same two counts as well as a third count of transmitting an interstate threatening communication in violation of 18 U.S.C. § 875(c). (Dkt. No. 22). Presently before the Court is Defendant's motion for funds pursuant to the Criminal Justice Act to retain various experts to assist in his defense. (Dkt. No. 134). The Court held an ex parte hearing on August 11, 2025 to evaluate Defendant's request.[1]

## II.     STANDARD OF REVIEW

The Criminal Justice Act (the "CJA") provides that an indigent criminal defendant may seek court authorization to incur costs to obtain "investigative, expert, or other services necessary for adequate representation." 18 U.S.C. § 3006A(e)(1). If a criminal defendant is financially unable to secure such "services," and they are in fact "necessary" for the defendant to mount an adequate defense, the Court must "authorize counsel to obtain the services." *Id.*; *see United States v. Ullah*, No. 04-cr-30A, 2006 WL 2375459, at *1[2] (W.D.N.Y. Aug. 14, 2006) (noting that "the Court must find that the services of an investigator and an expert witness are 'necessary' to the defendant's defense" in order to authorize their retention and the "payment of those services" under the CJA). "[A] defendant requesting public funds pursuant to § 3006A(e) has the burden of satisfying the district court that the services are reasonably necessary." *United States v. Sanchez*, 912 F.2d 18, 22 (2d Cir. 1990).

"[W]hile a trial court need not authorize an expenditure under [§ 3006A(e)] for a mere 'fishing expedition,' it should not withhold its authority when underlying facts reasonably suggest that further exploration may prove beneficial to the accused in the development of a

---

[1] "A defendant's indigency and need for assistance under § 3006A is to be determined by an ex parte proceeding." *United States v. Chavis*, 476 F.2d 1137, 1141, 1144 (D.C. Cir. 1973) (citing cases); 18 U.S.C. § 3006A(e)(1) (explaining that courts must make appropriate inquiries in an ex parte proceeding to determine that the services are necessary and that the person is financially unable to obtain them).

[2] No LEXIS cite.

defense to the charge." *United States v. Sanchez*, 912 F.2d 18, 22 (2d Cir. 1990) (second alteration in original) (quoting *United States v. Schultz*, 431 F.2d 907, 911 (8th Cir. 1970)). The CJA requires the district judge to authorize funds "in circumstances in which a reasonable attorney would engage such services for a client having the independent financial means to pay for them." *United States v. Durant*, 545 F.2d 823, 827 (2d Cir. 1976) (quoting *United States v. Bass*, 477 F.2d 723, 725 (9th Cir. 1973)). The decision to authorize expert compensation under the CJA "is committed to the discretion of the district court," but the court should "entertain such requests with a liberal attitude." *United States v. Bah*, 574 F.3d 106, 118 (2d Cir. 2009); *United States v. Salameh*, 152 F.3d 88, 118 (2d Cir. 1998).

The CJA sets a statutory cap of $2,400 for expert compensation "unless payment in excess of that limit is certified by the court . . . as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit." 18 U.S.C. § 3006A(e)(3). According to the CJA guidelines, the statutory cap for such compensation is presently $3,000 for services performed from January 1, 2024 to present. See U.S. Courts, *Guide to Judiciary Policy, Vol. 7 - Defender Services*, § 310.20.10(a) (Dec. 30, 2024); see also 18 U.S.C. § 3006A(e)(5) ("The dollar amounts provided in paragraphs (2) and (3) shall be adjusted simultaneously by an amount, rounded to the nearest multiple of $100, equal to the percentage of the cumulative adjustments taking effect under section 5303 of title 5 in the rates of pay under the General Schedule since the date the dollar amounts provided in paragraphs (2) and (3), respectively, were last enacted or adjusted by statute.").

### III. DISCUSSION

#### A. Investigator

Defendant requests an investigator to interview potential witnesses, collect records, review the Government's discovery, discover new possible witnesses and evidence, "authenticate the truthfulness of some information the Government provided," "potentially obtain some information [sic] contradict some information the Government's provided," and "prompt the Administration of Justice." (Dkt. No. 134, at 3). The Court finds that the only requested services reasonably necessary for an adequate defense are to: (1) interview government witnesses, and (2) interview two to three potential defense witnesses, and grants Defendant's request for an investigator on this basis only. *See Salameh*, 152 F.3d at 118 (explaining that "[s]ervices 'necessary for an adequate defense' include 'preparation for cross-examination of a government expert'" (quoting *United States v. Oliver*, 626 F.2d 254, 260 (2d Cir. 1980))). Therefore, pursuant to 18 U.S.C. § 3006A(e), the Court authorizes Defendant to retain an investigator for the limited purpose authorized herein, who may be compensated up to $3,000 for any services rendered in this case. To the extent that any such expert's services will exceed that amount, Defendant will be required to seek further approval, including ultimate approval from the Second Circuit. See 18 U.S.C. § 3006A(e)(3).

#### B. Forensic Expert

Defendant requests funds for a forensic expert to, *inter alia*, "examine Defendant's phone and computer records to identify and pursue issues," "examin [sic] and analyze discovery provided by the Government to identify and pursue issues," and "analyze Defendant's internet search activities during and after the alleged offense." (Dkt. No. 134, at 4). The Government has confirmed that it intends to introduce "evidence obtained from the forensic search of defendant's cellular telephone and other digital devices and storage media seized" during a search of his

4

residence as well as "[t]he Cell Site analysis prepared by FBI Special Agent Bastian Freund and supporting documentation data from T-Mobile for cell site records for Marseet cell phone." (Dkt. No. 111, ¶¶ 2, 13). Defendant is entitled to an expert consultant to examine evidence important to the Government's case-in-chief, and Defendant's internet search history to determine the precise time of relevant activities such as the phone calls from Defendant to the Clerk's Office in the Western District of New York, internet search(es) concerning United States District Court Judge Frank P. Geraci, Jr., and the alteration of the Wikipedia page of Judge Geraci. *See Salameh*, 152 F.3d at 118; *see also United States v. Guobadia*, No. 16-cr-6036, 2019 WL 192262, at *2, 2019 U.S. Dist. LEXIS 7207, at *4 (W.D.N.Y. Jan. 15, 2019). The Court has carefully reviewed Defendant's claims of falsified documents and evidence tampering in connection with his motions for discovery. Defendant has failed to show that the services of a forensic expert to consider these assertions is reasonably necessary to his defense. Therefore, a forensic expert is not authorized to investigate those assertions. Pursuant to 18 U.S.C. § 3006A(e), the Court authorizes Defendant to retain a computer forensic expert for the limited purposes authorized herein, who may be compensated up to $3,000 for any services rendered in this case. To the extent that any such expert's services will exceed that amount, Defendant will be required to seek further approval, including ultimate approval from the Second Circuit. See 18 U.S.C. § 3006A(e)(3).

    **C.**     **Mental Health Expert**

Defendant requests funds for a licensed mental health expert to "describe the mental health conditions of the Defendant during the alleged offense," "negate the subjective intent" elements of the charges, to support an insanity defense pursuant to 18 U.S.C. § 17, to "evaluate the damages the Defendant . . . suffered due to . . . RIT . . . and due to the severe and shameful

judicial misconduct by the falsely alleged victims," and to "provide scientific opinion about the lack of any threat by the Defendant." (Dkt. No. 134, at 5–6).

In evaluating whether a defendant has proven that psychiatric assistance is "necessary," a district court should consider the "likelihood that an insanity defense is warranted" and "whether the defendant has received sufficient psychiatric assistance from other sources." *Chavis*, 476 F.2d at 1143. In this case Defendant has informed the Court that he will not be asserting a defense of insanity at the time of the alleged offense, and therefore no psychiatric assistance concerning any such defense is warranted.[3]

Under the Federal Rules of Evidence, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). In accordance with this rule, Defendant is not entitled to have an expert state an opinion about whether he acted with the requisite mental state. However, a defendant may submit "mental health evidence for the purpose of rebutting the prosecution's proof of the *mens rea* element of a specific intent crime," although "such evidence should be permitted only in rare and narrowly defined circumstances." *Cromitie v. United States*, No. 09-cr-558, 2017 WL 1383982, at *5, 2017 U.S. Dist. LEXIS 59122, at *13 (S.D.N.Y. Apr. 7, 2017) (quoting *United States v. Dupre*, 462 F.3d 131, 137 (2d Cir. 2006)) (citing cases). "A defendant seeking to admit evidence of a mental impairment for this purpose must, therefore, demonstrate a direct link between such evidence and the *mens rea* that the Government is required to prove." *Id.*, 2017 WL 1383982, at *5, 2017 U.S. Dist. LEXIS 59122, at *13–14 (citing cases). Courts

---

[3] The Defendant has been found competent to stand trial, and no psychiatric assistance with respect to competency is warranted.

must "police the boundaries between permissible expert evidence that goes to negating the intent element of a crime and impermissible evidence that seeks to 'excuse' the crime." *United States v. Ray*, 583 F. Supp. 3d 518, 534 (S.D.N.Y. 2022).

In this case the Defendant has been charged with threatening to murder two United States judges "with intent to impede, intimidate and interfere with" the judges "while [they were] engaged in the performance of [their] official duties and with intent to retaliate against [them] on account of the performance of [their] official duties." (Dkt. No. 22). Defendant has also been charged with "knowingly, willfully, and unlawfully, and for the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat, transmit[ting] a communication in interstate or foreign commerce, that is, a telephone call . . . which contained threats to kill other persons," that is, the two above-referenced United States Judges and an employee of the Clerk's Office of the Western District of New York.

Accordingly, the Court finds that Defendant is entitled to funds for a mental health expert for the limited purposes of exploring, preparing, and presenting evidence rebutting the prosecution's proof of the *mens* rea elements of these crimes. The mental health expert is not authorized to consider the issue of competency or insanity. The Court finds that Defendant's other grounds for his request for a mental health expert are not reasonably necessary for an adequate defense. Therefore, pursuant to 18 U.S.C. § 3006A(e), the Court authorizes Defendant to retain a mental health expert for the limited services authorized herein, who may be compensated up to $3,000 for any services rendered in this case. To the extent that any such expert's services will exceed that amount, Defendant will be required to seek further approval, including ultimate approval from the Second Circuit. See 18 U.S.C. § 3006A(e)(3).[4]

---

[4] The Court cautions that just because Defendant is entitled to funds for an expert does not mean that testimony by the expert will be admissible at trial. In addition to complying with Fed. R. Evid. 704(b) and the caselaw described in this

7

### D. English Language Expert

Defendant requests funds for an English language expert to "analyze the falsified statement from the languistic [sic] structure and compare it to Marseet's English language level," "evaluate the English language tests the Defendant had taken," and "provide expert testimony about the alleged threat statement." (Dkt. No. 134, at 6). The language in the alleged threatening call here is very limited, *see* Dkt. No. 1 at 5, and the Court finds that Defendant has failed to establish that an English language expert is reasonably necessary. Accordingly, the Court denies Defendant's request for funds to retain an English language expert.

### IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion (Dkt. No. 134) for funds to pay for an investigator, forensic expert, and mental health expert is **GRANTED** for the limited purposes stated herein; and it is further

**ORDERED** that Defendant's motion (Dkt. No. 134) is otherwise **DENIED**; and it is further

**ORDERED** that the experts may each be compensated up to $3,000 for any services rendered in this case; and it is further

**ORDERED** that to the extent that any such expert's services will exceed that amount, Defendant will be required to seek further approval, including ultimate approval from the Second Circuit; and it is further

**ORDERED** that Defendant's stand-by counsel, David Pilato, assist Defendant with his request to hire experts; and it is further

---

opinion, any proposed testimony cannot be barred by the Insanity Defense Reform Act of 1984, and it must also meet the standards of Fed. R. Evid. 702 and Fed. R. Evid. 403.

**ORDERED** that Mr. Pilato contact Defendant for purposes of discussing the same and is encouraged to consult with the Federal Public Defender's Office for the Western District of New York for the purpose of identifying experts if necessary; and it is further

**ORDERED** that Defendant and Mr. Pilato must each file a status report by September 30, 2025, informing the Court whether an investigator, forensic expert and mental health expert have been retained and how much time each expert expects that they will need to complete the requested examination and investigation.

**IT IS SO ORDERED.**

Dated: August 12, 2025
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge