UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                                                              6:24-cr-6032 (BKS)

AKRAM MARSEET,

                                 Defendant.

---

**Appearances:**

*For the United States of America:*
Michael DiGiacomo
United States Attorney
Everardo A. Rodriguez
Assistant United States Attorney
100 State Street, Suite 500
Rochester, New York 14614

*Defendant pro se:*
Akram Marseet
603979
Monroe County Jail
130 South Plymouth Avenue
Rochester, New York 14614

*Standby Counsel for Defendant Akram Marseet:*
David C. Pilato
Pilato Law, PLCC
30 West Broad Street, Suite 100
Rochester, New York 14614

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

      On February 27, 2024, Defendant Akram Marseet was indicted on two counts of threatening a United States judge in violation of 18 U.S.C. § 115(a)(1)(B) and 18 U.S.C. § 115(b)(4). (Dkt. No. 7). On July 30, 2024, in a superseding indictment, Defendant was indicted

on those same two counts as well as a third count of transmitting an interstate threatening communication in violation of 18 U.S.C. § 875(c). (Dkt. No. 22). Defendant has chosen to proceed pro se, and the case is set for trial on January 26, 2026. Presently before the Court is the Government's motion to strike Defendant's "declaration/notice to use insanity defense." (Dkt. No. 192). In the alternative, the Government moves for an order under Fed. R. Crim. P. 12.2(c)(1)(B) requiring Defendant to submit to a psychiatric or psychological examination. (*Id.*). Defendant opposes the motion. (Dkt. No. 221).

**II.    BACKGROUND**

The superseding indictment alleges that on January 10, 2024, Defendant threatened to murder United States Judges Frank P. Geraci and Marian W. Payson, in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4). (Dkt. No. 22). According to the superseding indictment, Defendant did so "with intent to impede, intimidate and interfere with" the judges while they were "engaged in the performance of [their] official duties" and "with intent to retaliate against [the judges] on account of the performance of [their] official duties." (*Id.* at 1–2). The superseding indictment further alleges that on January 10, 2024, Defendant "knowingly, willfully, and unlawfully, and for the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat, transmit a communication in interstate or foreign commerce," in violation of 18 U.S.C. § 875(c). (*Id.* at 2–3). Specifically, the superseding indictment alleges that Defendant placed a telephone call from Colorado to New York, "which contained threats to kill other persons, specifically Frank P. Geraci, Marian W. Payson and 'D.F.' an employee of the Clerk's Office for the Western District of New York." (*Id.*).

Defendant first appeared in the Western District of New York on February 15, 2024, with an Assistant Federal Public Defender. (Dkt. No. 5). At Defendant's request, on August 15, 2024, the Assistant Federal Public Defendant was relieved as counsel, and private counsel Dominic

Saraceno took over the representation. (Text Minute Entry on August 15, 2024). A few months later, on October 18, 2024, Defendant sought to represent himself pro se and the Court granted that request. (Dkt. No. 39). Defendant has represented himself pro se since that time.

On January 21, 2025, Defendant filed a motion for funds to pay for an investigator and experts. (Dkt. No. 70). Defendant sought a mental health expert, and listed a number of reasons including, "[t]o be used for Defendant's defense pursuant to 18 U.S.C. 17." (Dkt. No. 70, at 2). During an ex parte hearing on Defendant's request on February 7, 2025, the Court specifically asked Defendant if he sought to have an expert evaluate him to determine if he was insane at the time of the offense and he said that he did not. After a lengthy discussion of the applicable law and Defendant's multiple requests for experts, the Court terminated the motion and granted Defendant leave to file a new motion. (Text Minute Entry for Ex Parte Conference held on 2/7/2025).

On April 1, 2025, the Court sua sponte ordered Defendant to be committed to the custody of the Attorney General under 18 U.S.C. §§ 4241 and 4247 for an examination to determine his current mental competence. (Dkt. No. 116). The competency evaluator concluded that Defendant was not suffering from a mental disease and was not suffering from a mental defect. (Dkt. No. 130, at 15). The evaluator concluded that Defendant was competent to proceed and was competent to represent himself. (*Id.* at 16–21).

On July 8, 2025, Defendant filed a new motion for funds to pay experts, again seeking a mental health expert. (Dkt. No. 134, at 5). Defendant sought a mental health expert to, inter alia, "describe the mental health condition of the Defendant during the alleged offense," "describe the diminished capacity defense," and "to support Defendant defense pursuant to 18 U.S.C. 17 if needed as the last defense if all other defenses will not work." (Dkt. No. 134, at 5). On that same

3

date Defendant filed a "declaration to use expert evidence and expert witnesses" in which he stated that he intends to use expert evidence and testimony "to negage[1] the likelihood that Defendant was able to committ the falsely alleged offense and in worst case scenario to negate the subject intent element . . . based on Defendant's right to use diminished capacity defense." (Dkt. No. 133, at 1).

On August 6, 2025, the Court issued a text order noting that it was not clear to the Court whether Defendant's "declaration to use expert evidence and expert witness" provided notice of an insanity defense as required by Fed. R. Crim. P. 12.2(a). The Court directed Defendant to notify the Government in writing by August 11, 2025 if he intended to assert a defense of insanity. (Dkt. No. 143).

At a hearing on August 11, 2025, the Court addressed the competency evaluation. The Court noted that "[h]aving carefully reviewed that evaluation and based on my own experiences with Mr. Marseet in the courtroom and what counsel on all sides of this case have repeatedly informed me, I do find that Mr. Marseet is competent and that he is competent to represent himself." Government counsel agreed, and Defendant agreed that he was competent to represent himself and competent to stand trial. (Dkt. No. 203, at 4–5).[2] At the hearing the Court questioned Defendant about whether he intended to assert an insanity defense. (Dkt. No. 203, at 23). Defendant responded, "I reserve my right if I want to use it an appropriate time based on the circumstances." (*Id.* at 24). When the Court told Defendant that he could not reserve his right until trial, Defendant stated that at this point he did not intend to raise an insanity defense. (*Id.*).

---

[1] The Court has quoted from document submitted by the Defendant as they are written, without notations or corrections.

[2] Defendant said that he did not "remember" the assessment that he was not suffering from a mental defect and so he could not agree or disagree with that. (Dkt. No. 203, at 5).

4

Following this hearing the Court held an ex parte hearing on Defendant's motion for funds to pay experts. (Dkt. No. 203, at 72-82). The Court granted Defendant's request for funds "for a mental health expert for the limited purposes of exploring, preparing and presenting evidence rebutting the prosecution's proof of the mens rea elements of" the charged crimes. (Dkt. No. 149, at 7). The Court, however, noted that Defendant "has informed the Court that he will not be asserting a defense of insanity at the time of the alleged offense, and therefore no psychiatric assistance concerning any such defense is warranted." (*Id.* at 6). The Court therefore ruled that the mental health expert "is not authorized to consider the issue of . . . insanity." (*Id.* at 7). The Court set trial for January 26, 2026, after considering the time that would be necessary for a mental health expert. (Dkt. No. 203, at 40–46).

On October 14, 2025, Defendant submitted a "declaration to use insanity defense and the associated need to use expert witness and expert evidence." (Dkt. No. 186, at 1). Defendant argues that he seeks to raise this defense in order to prevent the Court from imposing an above-Guidelines sentence. (Dkt. No. 186). The Government moves to strike this declaration/notice "because it is late, because it seeks to delay the proceedings and trial of this case and because, on its face, it is substantively and factually meritless." (Dkt. No. 192).

### III.   NOTICE OF AN INSANITY DEFENSE

Under Rule 12.2(a) of the Federal Rules of Criminal Procedure,

> [a] defendant who intends to assert a defense of insanity at the time of the alleged offense must so notify an attorney for the government in writing within the time provided for filing a pretrial motion, or at any later time the court sets, and file a copy of the notice with the clerk. A defendant who fails to do so cannot rely on an insanity defense. The Court may, for good cause, allow the defendant to file the notice late, grant additional trial-preparation time, or make other appropriate orders.

The Second Circuit has noted that "[b]y its terms . . . Rule 12.2(a) contemplates that a defendant who fails to comply with the time requirements waives his right to raise an insanity

defense." *United States v. Duggan*, 743 F.2d 59, 80 (2d Cir. 1984) *superseded by statute on other grounds*, *United States v. Abu-Jihaad*, 630 F.3d 102, 119-20 (2d Cir. 2010). However, a court "may, for good cause, allow the defendant to file the notice late, grant additional trial preparation time, or make other appropriate orders." Fed. Crim. R. 12.2(a). In *Duggan*, the Court noted that "'[c]ause' consists not only of explanation for the belatedness of the party's action but also of a showing of some merit in the position belatedly to be advanced." *Id.* "Whether the defendant has demonstrated sufficient 'cause' is necessarily a matter for the district court to evaluate in its discretion on a case by case basis." *Id.*

## IV.  ANALYSIS

The Court directed Defendant to notify the Government by August 11, 2025 if he intended to assert a defense of insanity. (Dkt. No. 143). On August 11, 2025, Defendant informed the Court that he did not intend to raise an insanity defense, and the Court set trial for January 26, 2026. (Dkt. No. 203, at 23–24; Dkt. No. 144). Defendant's notice, filed on October 14, 2025, is therefore untimely. (Dkt. No. 186).

While the Court may, for good cause, "allow the defendant to file the notice late, grant additional trial-preparation time or make other appropriate orders," the Court does not find good cause. Defendant asserts that he is filing his request

> to notify the Court and the Government about Defendant's intent to use insanity defense pursuant to 18 U.S.C. 17 due to the Outrageous Court conduct to preven the Undersigned from further abuse of her discretion especially after the Undersigned expressed her racism and Terrorist tendencies towards Defendant Marseet which reached the peak on during court hearing that was held on August 11, 2025 where the Undersigned demonstrated her intention to go outside the guidelines if Defendant will lose the trial and implied to impose the maximum sentencing even though Mr. Marseet is innocent. (Dkt. No. 186, at 1).

6

*See also* Dkt. 221 (describing "the main reason for the declaration to use insanity defense is due to the outrageous Court conduct who threatened to go outside the guidelines").[3]

Defendant is presumably referring to a portion of the August 11, 2025 hearing in which the Court questioned Defendant about his desire to proceed pro se, and sought to ensure that he understood the significant consequences of convictions in this case, in accord with *Faretta*.[4] When the Court asked if Defendant understood that the charges "carry a substantial maximum term of incarceration," Defendant responded that he was aware of the offense level under the Guidelines and saw that the Court "sentenced another defendant [to] just three months." (Dkt. No. 203, at 59). The Court then asked government counsel to state the maximum possible penalty. (*Id.*) When Defendant later questioned whether there was a $250,000 maximum fine because this is an "offense level 18," the Court noted

> You're looking at the Sentencing Guidelines and it's important that you understand the Court is not bound by the Sentencing Guidelines. The Court can impose a sentence above or below the Guidelines range based on appropriate sentencing facts." So its important that you understand that the maximum term of imprisonment on counts [1] and 2 is ten years. The Court cannot impose more than ten years.

(*Id.* at 60–61).

The Court finds that Defendant has failed to provide any valid explanation for a late notice of intent to rely on a defense of insanity. Moreover, given the timing and nature of Defendant's representations regarding an insanity defense and the Defendant's other voluminous

---

[3] In his opposition to the Government's motion Defendant also argues that notice of the insanity defense was not late because he had not yet met with the mental health expert and "upon information and belief the mental health expert did not receive the medical records yet." (Dkt. No. 221, at 29). This is not a valid explanation for the delay. The mental health expert was "not authorized to consider the issue of . . . insanity" because Defendant had "informed the Court that he will not be asserting a defense of insanity at the time of the alleged offense," and the Court accordingly found that "no psychiatric assistance concerning any such defense is warranted." (Dkt. No. 149, at 7)

[4] *Farretta v. California*, 422 U.S. 806 (1975).

and repetitive motions, the Court finds that Defendant is seeking to raise this issue for the purpose of delaying the trial set for January 26, 2026.

Nor has Defendant made any showing of merit. Defendant is alleged to have made the threat in this case, against United States District Court Judge Frank Geraci, United States Magistrate Judge Marion Payson, and an intake clerk in the Western District of New York the day that Judge Geraci dismissed a civil case Plaintiff had pending in the Western District of New York before Judges Geraci and Payson. (Dkt. No. 1). At that time Defendant was enrolled in the Colorado School of Mines working toward a doctorate degree. (Dkt. No. 56-3, at 56-57). The competency evaluator concluded that Defendant was not suffering from a mental disease and was not suffering from a mental defect. (Dkt. No. 130, at 15). There is nothing in this record to suggest that a defense of insanity may have merit.[5]

The Court accordingly finds that Defendant has waived his right to raise an insanity defense. *Duggan*, 743 F.2d at 80–81.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's request to raise a belated defense of insanity (Dkt. Nos. 186, 221) is **DENIED**; and it is further

**ORDERED** that to the extent the Government's motion (Dkt. No. 192) to strike Defendant's declaration to use insanity defense seeks to preclude an insanity defense, it is

---

[5] *See* 18 U.S.C.§ 17(a) (It is an affirmative defense to a prosecution under any Federal Statute that, at the time of the commission of the acts constituting the offense, the defendant as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts.")

**GRANTED**, and the Government's motion is otherwise **DENIED** as moot.

**IT IS SO ORDERED.**

Dated: December 15, 2025
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge