UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────────────

UNITED STATES OF AMERICA,

v.                                                              6:24-cr-6032 (BKS)

AKRAM MARSEET,

                              Defendant.

─────────────────────────────────────────────

**Appearances:**

*For the United States of America:*
Michael DiGiacomo
United States Attorney
Everardo A. Rodriguez
Assistant United States Attorney
100 State Street, Suite 500
Rochester, New York 14614

*Defendant pro se:*
Akram Marseet
603979
Monroe County Jail
130 South Plymouth Avenue
Rochester, New York 14614

*Standby Counsel for Defendant Akram Marseet:*
David C. Pilato
Pilato Law, PLCC
30 West Broad Street, Suite 100
Rochester, New York 14614

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

      A second superseding indictment returned on January 6, 2026 charges Defendant Akram Marseet with one count of threatening United States judges, in violation of 18 U.S.C. § 115(a)(1)(B) and 18 U.S.C. § 115(b)(4), and one count of transmitting an interstate threatening

communication, in violation of 18 U.S.C. § 875(c). (Dkt. No. 284). The case is currently set for trial on May 11, 2026. Presently before the Court is the Government's motion to exclude expert testimony regarding Defendant's mental illness. (Dkt. No. 318). Defendant opposes the motion. (Dkt. No. 331). For the following reasons, a ruling on the Government's motion is deferred pending further briefing.

## II.    BACKGROUND

The second superseding indictment alleges that on January 10, 2024, Defendant threatened to murder United States Judges Frank P. Geraci and Marian W. Payson, in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4). (Dkt. No. 284). Defendant is alleged to have done so "with intent to impede, intimidate and interfere with" the judges "while they were engaged in the performance of their official duties" and "with intent to retaliate against [the judges] on account of the performance of their official duties." (*Id.*). The indictment further alleges that on January 10, 2024, Defendant did "knowingly, and willfully" "transmit in interstate commerce" "a communication, that is a telephone call threatening to injure and kill" Judges Geraci and Payson and an employee of the Clerk's Office for the Western District of New York, in violation of 18 U.S.C. § 875(c). (*Id.* at 2).

Defendant first appeared in the Western District of New York on February 15, 2024, with an Assistant Federal Public Defender. (Dkt. No. 5). At Defendant's request, on August 15, 2024, the Assistant Federal Public Defender was relieved as counsel, and private counsel Dominic Saraceno took over the representation. (Text Minute Entry on August 15, 2024). A few months later, on October 18, 2024, Defendant sought to represent himself pro se and the Court granted that request. (Dkt. No. 39). Defendant has represented himself pro se since that time.

On April 1, 2025, the Court sua sponte ordered Defendant to be committed to the custody of the Attorney General under 18 U.S.C. §§ 4241 and 4247 for an examination to determine his

current mental competence. (Dkt. No. 116). The competency evaluator concluded that Defendant was not suffering from a mental disease and was not suffering from a mental defect. (Dkt. No. 130, at 15). The evaluator concluded that Defendant was competent to proceed and was competent to represent himself. (*Id.* at 16–21).

On July 8, 2025, Defendant filed a motion for funds to pay experts, seeking a mental health expert. (Dkt. No. 134, at 5). Defendant sought a mental health expert to, inter alia, "describe the mental health condition of the Defendant during the alleged offense," "describe the diminished capacity defense," and "to support Defendant defense pursuant to 18 U.S.C. 17 if needed as the last defense if all other defenses will not work." (*Id.*). On that same date Defendant filed a "declaration to use expert evidence and expert witnesses" in which he stated that he intends to use expert evidence and testimony "to negage [sic] the likelihood that Defendant was able to committ [sic] the falsely alleged offense and in worest [sic] case scenario to negate the subject intent element . . . based on Defendant's right to use diminished capacity defense." (Dkt. No. 133, at 1).

On August 6, 2025, the Court issued a text order noting that it was not clear to the Court whether Defendant's "declaration to use expert evidence and expert witness" provided notice of an insanity defense as required by Fed. R. Crim. P. 12.2(a). (Dkt. No. 143). The Court directed Defendant to notify the Government in writing by August 11, 2025 if he intended to assert a defense of insanity. (*Id.*).

At a hearing on August 11, 2025, the Court addressed the competency evaluation. The Court noted that "[h]aving carefully reviewed that evaluation and based on my own experiences with Mr. Marseet in the courtroom and what counsel on all sides of this case have repeatedly informed me, I do find that Mr. Marseet is competent and that he is competent to represent

3

himself." (Dkt. No. 203, at 3–4). Government counsel agreed, and Defendant agreed that he was competent to represent himself and competent to stand trial. (*Id.* at 4–5). At the hearing the Court questioned Defendant about whether he intended to assert an insanity defense. (*Id.* at 23). Defendant responded, "I reserve my right if I want to use it an appropriate time based on the circumstances." (*Id.* at 24). When the Court told Defendant that he could not reserve his right until trial, Defendant stated that at this point he did not intend to raise an insanity defense. (*Id.*).

Following this hearing the Court held an ex parte hearing on Defendant's motion for funds to pay experts. (*Id.* at 72–82). The Court granted Defendant's request for funds "for a mental health expert for the limited purposes of exploring, preparing and presenting evidence rebutting the prosecution's proof of the mens rea elements of" the charged crimes. (Dkt. No. 149, at 7). The Court, however, noted that Defendant "has informed the Court that he will not be asserting a defense of insanity at the time of the alleged offense, and therefore no psychiatric assistance concerning any such defense is warranted." (*Id.* at 6). The Court therefore ruled that the mental health expert "is not authorized to consider the issue of . . . insanity." (*Id.* at 7). The Court set trial for January 26, 2026, after considering the time that would be necessary for a mental health expert. (Dkt. No. 203, at 40–46).

On October 14, 2025, Defendant submitted a "declaration to use insanity defense and the associated need to use expert witness and expert evidence." (Dkt. No. 186, at 1). Defendant argued that he seeks to raise this defense in order to prevent the Court from imposing an above-Guidelines sentence. (*Id.*). The Government moved to strike this declaration/notice "because it is late, because it seeks to delay the proceedings and trial of this case and because, on its face, it is substantively and factually meritless." (Dkt. No. 192, at 1). The Court granted that motion because: Defendant's notice was untimely; Defendant failed to provide any valid explanation for

4

the belated notice; the Court found that Defendant was seeking to raise the issue to delay the January 26, 2026 trial date; and there was nothing in the record to suggest that a defense of insanity may have merit. (Dkt. No. 264).

On January 12, 2026, the mental health expert retained by Defendant, Dr. Gretchen N. Foley, submitted her forensic psychiatric evaluation to the Court and the Government. Dr. Foley concluded that Defendant "has a well-documented history of serious persistent mental illness, namely Schizoaffective Disorder, Bipolar Type and that he was suffering with significant symptoms of this illness at the time of the alleged instant offense." (Report, at 1). Defendant subsequently submitted a request to permit Dr. Foley to examine him for the purposes of possibly raising an insanity defense at trial, (Dkt. No. 323), and the Court granted that request, (Dkt. No. 335).

The parties dispute whether Dr. Foley's testimony regarding Defendant's mental illness is admissible at trial. (Dkt. No. 318, 331).

### III. DISCUSSION

#### A. Applicable Law Regarding Mental Health Evidence

Under the Federal Rules of Evidence, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). In accordance with this rule, Dr. Foley may not testify to an opinion about the "ultimate issue" of whether Defendant acted with the requisite mental state. *See United States v. Dupre*, 462 F.3d 131, 138 (2d Cir. 2006).

The Insanity Defense Reform Act ("IDRA") of 1984 "placed significant restrictions on the use of mental defect evidence," such that beyond insanity "[m]ental disease or defect does not . . . constitute a defense." *United States v. Twine*, 853 F.2d 676, 678 (9th Cir. 1988); 18

5

U.S.C. § 17(a) ("[m]ental disease or defect" outside of the affirmative defense of insanity "does not . . . constitute a defense."). Courts have noted that IDRA "leaves no room for a defense that raises 'any form of legal excuse based upon one's lack of volitional control' including 'a diminished ability or failure to reflect adequately upon the consequences or nature of one's actions.'" *United States v. Worrell*, 313 F.3d 867, 872 (4th Cir. 2002) (quoting *United States v. Cameron*, 907 F.2d 1051, 1061 (11th Cir. 1990); *see also United States v. Ray*, 583 F. Supp. 3d 518, 534 (S.D.N.Y. 2022) (noting that IDRA eliminated any form of legal excuse based on a defendant's lack of volitional control and eliminated affirmative defenses such as diminished capacity, diminished responsibility, mitigation and justification) (cleaned up) (citation omitted). IDRA thus bars psychiatric mental health evidence if it is in the nature of "a legal justification or excuse for otherwise criminal conduct." *Worrell*, 313 F.3d at 873 (quoting *Cameron*, 907 F.2d at 1065).

IDRA, however, "does not preclude a defendant from submitting mental health evidence for the purpose of rebutting the prosecution's proof of the *mens rea* element of a specific intent crime." *Dupre*, 462 F.3d at 137. Circuit Courts have noted that such evidence is admissible if "rather than justifying defendant's conduct," the evidence "negates an essential element of the government's prima facie case." *Worrell*, 313 F.3d at 873 (quoting *Cameron*, 907 F.2d at 1065); *see also United States v. Pohlot*, 827 F.2d 889, 905–06 (3d Cir. 1987). The admissibility of such evidence "will be rare." *Worrell*, 313 F.3d at 873–74 (noting that the court has "difficulty envisioning many scenarios in which a defendant could introduce psychiatric evidence, short of insanity, that was not simply diminished capacity evidence or some other form of justification in disguise"); *see also Cromitie v. United States*, No. 09-cr-558, 2017 WL 1383982, at *5, 2017

6

U.S. Dist. LEXIS 59122, at *13 (S.D.N.Y. Apr. 7, 2017) ("[S]uch evidence should be permitted only in rare and narrowly defined circumstances") (citing cases).

The Eleventh Circuit has noted that:

Because psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury's from focusing on the actual presence or absence of *mens rea*, and (3) "may easily slide into wider usage that opens up the jury to theories of defense more akin to justification . . . district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, "support a *legally acceptable* theory of lack of *mens rea*."

*Cameron*, 907 F.2d at 1067 (quoting *Pohlot*, 827 F.2d at 904–06); *see also Ray*, 583 F. Supp. 3d at 534 (noting that courts must "police the boundaries between permissible expert evidence that goes to negating the intent element of a crime and impermissible evidence that seeks to 'excuse' the crime"). Courts have thus held that a defendant seeking to admit evidence of a mental impairment to rebut the mens rea element of an offense must "demonstrate a direct link between [the proffered expert] evidence and the *mens rea* that the Government is required to prove." *Ray*, 583 F. Supp. 3d at 535 (quoting *Cromitie*, 2017 WL 1383982, at *5, 2017 U.S. Dist. LEXIS 59122, at *14); *see United States v. Jones*, No. 16-cr-0553, 2018 WL 1115778, at *5, 2018 U.S. Dist. LEXIS 31703, at *15 (S.D.N.Y. Feb. 2, 2018) (Nathan, J.).

### B. Mens Rea of the Charged Offenses

In this case Defendant has been charged with threatening to murder two United States judges "with intent to impede, intimidate and interfere with" two federal judges "while [they] were] engaged in the performance of [their] official duties and with intent to retaliate against [them] on account of the performance of [their] official duties." (Dkt. No. 284, at 1). Defendant has also been charged with "knowingly and willfully" transmitting in interstate commerce "a communication, that is, a telephone call threatening to injure and kill" the two federal judges and an employee of the Clerk's Office of the Western District of New York. (*Id.* at 2).

To prevail under 18 U.S.C. § 115(a)(1)(B), the government must establish that Defendant acted with "the intent to impede, intimidate, interfere with, or retaliate against" the federal judges. *United States v. Garnes*, 102 F.4th 628, 637 (2d Cir. 2024). And to establish a violation of 18 U.S.C. § 875(c), the Government must prove that Defendant "intentionally transmitted a communication in interstate commerce" and that he "transmit[ted] [the] communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *United States v. Lemke*, No. 21-cr-100, 2021 WL 3195470, at *2, 2021 U.S. Dist. LEXIS 140914, at *4 (S.D.N.Y. July 28, 2021).

Finally, to prevail under either § 875(c) or § 115(a)(1)(B), "the government must show both that the statements [Defendant] made would, objectively, convey to the listener that the threatening language represented a genuine threat, and that in making his statements, he 'consciously disregarded a substantial risk that his communications would be viewed as threatening violence'" to the federal judges and the court employee. *Garnes*, 102 F.4th at 637 (quoting *Counterman v. Colorado*, 600 U.S. 66, 69 (2023)).[1]

**C.    Discussion**

The Government moves to exclude Dr. Foley's testimony asserting: that it would violate Fed. R. Evid 704(b); that it constitutes an impermissible justification defense; that this case is not one of the narrowly defined circumstances in which evidence of mental illness is admissible to rebut specific intent; and that Dr. Foley fails to identify a direct link between Defendant's alleged mental illness and the requisite mens rea. (Dkt. No. 318). The Government also seeks to exclude Dr. Foley's testimony under Fed. R. Evid. 403. (*Id.*). Defendant opposes the motion. (Dkt. No. 331). As relevant here, Defendant argues that Dr. Foley's testimony "will prove that Defendant

---

[1] The Court notes that the Government's proposed jury instructions should be updated to reflect this element.

did not have the sufficient mental capacity due to his mental illnesses"; that the testimony complies with the Advisory Committee note to Rule 704(b); and that this case presents one of the rare circumstances in which mental health evidence is admissible.[2] (Dkt. No. 331, at 4, 23).

### 1. Dr. Foley Cannot Opine on Whether Defendant Had the Requisite Mental State

Dr. Foley cannot state an opinion about whether Defendant did or did not have the requisite mental state because that is an issue "for the trier of fact alone." Fed. R. Evid. 704(b). As the Government argues, Dr. Foley cannot therefore testify that Defendant lacked the intent to threaten the judges and the court employee. Defendant acknowledges that Dr. Foley "will not testify that Defendant did or did not have the requisite mental state." (Dkt. No. 331, at 4).

### 2. Analysis of Dr. Foley's Testimony Regarding Defendant's Mental Illness

In her report Dr. Foley opined that Defendant "has a well documented history of serious persistent mental illness, namely Schizoaffective Disorder, Bipolar Type and that he was suffering with significant symptoms of this illness at the time of the alleged instant offense." (Report, at 1). She further opined that "the symptoms of this disorder significantly impaired [Defendant's] ability to form the requisite mens rea in this case." (*Id.*).

In discussing Defendant's fixation on his civil lawsuit, Dr. Foley noted that Defendant "distorted and assimilated" information concerning the civil case "into an illogical and unlikely reality"; that Defendant "appears unable to consider that" his perceptions are wrong; and that "he does not appreciate how his behavior comes across to other people," and concluded that Defendant's "level of perseveration is indicative of a disordered thought process and ongoing

---

[2] Defendant's discussion of why this is a rare case is not relevant to the legal analysis that the Court must consider in assessing whether the evidence is admissible to rebut the mens rea element of a charged crime, and whether its probative value is substantially outweighed by the dangers in Fed. R. Evid. 403.

psychosis." (Report, at 9). Dr. Foley found that Defendant suffered from "persistent" and "long standing" delusions. (Report, at 12, 14). In the conclusions section of her report, Dr. Foley stated:

> If [Defendant] made the alleged statement, I doubt that he had the ability in the moment to consider how his words would be understood by others or what the potential consequences would be for saying them.
>
> [If Defendant] did say these things, it is my opinion that such a statement, "if I ever come across any of you sons of bitches you'll be dead" is more consistent with an underlying psychiatric disorder that worsens with stressful conditions and was more likely the result of his impulsivity, inability to regulate his affective state, and consider how the world experiences him as opposed to someone consciously intending to threaten another individual.
>
> [Defendant] demonstrates a troubling lack of insight into his own mental state and how it is negatively impacting his behavior and situation.
>
> [Defendant's] thought disorganization, perceptual distortions, and affective dysregulation coupled with significant impulsivity and a near non-existent ability to consider how others might perceive him likely contributed in this situation.

(Report, at 14)

Neither Dr. Foley's report nor the briefing address how evidence of the diagnosed mental illness would negate the requirement in § 115(a)(1)(B) that Defendant acted with "the intent to impede, intimidate, interfere with, or retaliate" against the judges. *Garnes*, 102 F.4th at 637. There does not appear to be any link between the diagnosed mental illness and Defendant's intent to make the telephone call or that he did so for the purpose of making the alleged threat. *Lemke*, 2021 WL 3195470 at *2, 2021 U.S. Dist. LEXIS 140914, at *4. The Government must also establish, under § 115(a)(1)(B) and 875(c) that Defendant "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Garnes*, 102 F.4th at 637 (quotation omitted). The alleged threat in this case, however, on its face threatens violence: "If I ever come across any of you, you will be dead sons of bitches." (Dkt. No. 1, ¶ 9).

10

The parties have not addressed whether the relevant symptoms of Dr. Foley's diagnosis – a disordered thought process and ongoing psychosis – may be probative to rebut the specific mens rea that the Government is required to establish, including the requirement that Defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence. As the district court noted in *Dupre*, in considering whether to admit evidence of Bipolar Disorder with Psychotic Features, "determining whether to admit this particular type of expert testimony can be challenging due to the ethereal line prior cases have drawn between impermissible mental disease evidence addressing a defendant's inability to engage in normal reflection, and permissible mental disease evidence advancing a 'legitimate' *mens rea* theory." *Dupre*, 339 F. Supp. 2d at 544.

In *Worrell*, the Fourth Circuit held that a district court properly excluded psychiatric testimony that a defendant charged with mailing threatening communications, in violation of 18 U.S.C. § 876, "was psychiatrically impaired at the time of the offenses as indicated by his impulsivity, mood swings, extreme irritability, disorganized thinking and impaired judgment." *Worrell*, 313 F.3d at 875 (quotation marks deleted). The Court noted that the opinion evidence did not address the applicable specific intent requirement – whether the defendant intended to mail the letters – and it was "precisely the kind of psychiatric evidence that IDRA precludes." *Id*. The Court noted:

> This evidence is clearly calculated to show that [Defendant], because of his unmedicated bipolar and intermittent explosive disorders, was not able to control his behavior or reflect on potential consequences before acting. This is no different than evidence that [the defendant] lacked the ability to confirm his behavior to the requirements of law. IDRA bars a defendant who is not pursuing an insanity defense from offering evidence of his lack of volitional control as an alternative defense.

*Id. See also Pohlot*, 827 F.2d at 906–07 (ruling that evidence of the defendant's mental abnormality did not support a legally acceptable theory of lack of mens rea in case where the

11

defendant had engaged in "careful activity, over a lengthy period of time," directed toward killing his wife); *Cameron,* 907 F.2d at 1067 (affirming district court's exclusion of evidence that the defendant had been diagnosed as schizophrenic, noting that the defendant failed to demonstrate how this evidence would negate intent and "not merely present a dangerously confusing theory of defense more akin to justification and excuse than a 'legally acceptable theory of lack of *mens rea*'" (quoting *Pohlot*, 827 F.2d at 906)); *United States v. Brown*, 326 F.3d 1143, 1148 (10th Cir. 2003) (affirming exclusion of evidence of "post traumatic stress disorder coupled with chemical dependency" because the defendant failed "to connect his mental condition with any legally acceptable theory that he lacked specific intent" in a drug conspiracy and firearm prosecution).

However, because the parties have not specifically addressed whether there is a link between the mental health evidence and the specific mens rea requirements at issue here, and because the Government now seeks its own psychiatric or psychological examination of the Defendant by the Government's expert, the Court declines to rule on this issue without further briefing.

In any event, even if Dr. Foley's testimony did have probative value the Court would have to evaluate whether the probative value is substantially outweighed by the dangers in Fed. R. Evid 403. The Government argues that the introduction of this evidence raises concerns that the jury will be confused or mislead into considering it as evidence of an impermissible volitional or diminished capacity, and that it should be excluded because the testimony is "insufficiently probative." *See*, *e.g. Dupre*, 462 F.3d at 138 (affirming district court's exclusion, under Fed. R. Evid. 403 of a psychological assessment that the defendant's pervasive religious beliefs interfered with her ability "to see her involvement in the 'investment project' in a realistic

manner" and "significantly contribute to her ongoing conviction that she has been involved in a legitimate enterprise," citing to the dangers of unfair prejudice, confusion of the issues and its tendency to mislead the jury); *Ray*, 583 F. Supp. 3d at 540 (noting that the presentation of justification or diminished capacity evidence to a jury "creates a substantial risk that it will be used for an impermissible purpose during deliberations") (quoting *Dupre*, 339 F. Supp. 2d at 544).

### 3. Other Miscellaneous Opinions

The Government also objects to Dr. Foley's opinions that Defendant is at low risk of harming others and would likely be discharged with a referral for outpatient care if he presented at a psychiatric emergency department. (Dkt. No. 318, at 14). These opinions are not relevant or admissible at trial, and any conceivable relevance is substantially outweighed by the dangers of confusing the issues and misleading the jury. *See* Fed. R. Evid. 401, 402. Nor may Dr. Foley opine on whether the alleged threat in this case was a true threat. That is not a subject for expert psychiatric testimony: it is an issue for the jury. *See United States v. Hunt*, 82 F.4th 129, 136–37 (2d Cir. 2023) (evaluating sufficiency of evidence for conviction under 18 U.S.C. § 115 and noting the court's "well-established view that 'whether words used are a true threat' is 'a question of fact' for the jury" (quoting *United States v. Amor*, 24 F.3d 432, 436 (2d Cir. 1994)).

### IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that a ruling on the Government's motion to exclude expert testimony regarding Defendant's mental illness (Dkt. No. 318) is deferred pending further briefing from the parties; and it is further

**ORDERED** that the parties may submit a supplemental brief on the issues raised in this Memorandum Decision and Order by April 3, 2026.

**IT IS SO ORDERED.**

Dated: March 9, 2026
Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
Chief U.S. District Judge